1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

KELLI TURCOTTE,

             Plaintiff,

    v.

RENTON COIL SPRING CO., INC., et al.,

             Defendants.

CASE NO. C07-1689JLR

ORDER GRANTING
PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY
JUDGMENT

      This matter comes before the court on cross-motions for summary judgment.
Defendant Renton Coil Spring Co., Inc. ("RCS") moves for summary judgment on the
issue of exempt employee (Dkt. # 10). Plaintiff Kelli Turcotte moves for partial summary
judgment on this issue (Dkt. # 23). The parties do not request oral argument and the
court finds this matter appropriate for disposition without argument. Having reviewed the
pleadings and supporting documents, the court DENIES RCS's motion for summary
judgment (Dkt. # 10) and GRANTS Ms. Turcotte's motion for partial summary judgment
(Dkt. # 23).

ORDER – 1

# I. Introduction

Ms. Turcotte was employed as a sales person for RCS in its Renton, Washington office from September 2004 through June 2007. RCS paid Ms. Turcotte a salary of approximately $60,000 per year and did not pay Ms. Turcotte any overtime for work she performed for RCS in excess of 40 hours per week. Ms. Turcotte contends that she was a nonexempt employee and that she should be compensated for hours worked in excess of 40 per week. Specifically, Ms. Turcotte claims that she should be awarded back overtime compensation for the many weekends that she traveled to trade shows and other events as a sales representative of RCS. Ms. Turcotte filed this action against RCS and its president, Chuck Pepka, shortly after her departure from RCS claiming that the company owes her unpaid wages and overtime compensation pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.* and the Washington Minimum Wage Act ("MWA"), RCW § 49.46. (Compl. (Dkt. # 1) ¶¶ 5.1-6.4.) RCS moves for a judgment from the court finding that Ms. Turcotte, as an administrative employee, was exempt under both the FLSA and MWA. Ms. Turcotte moves for an order from the court finding her a nonexempt employee entitled to overtime wages.

# II. Background[1]

RCS is a designer, manufacturer and distributor of coil springs – a component necessary to the function of engines and motors – to the aerospace and automotive industry. (Declaration of Chuck Pepka ("Pepka Decl.") (Dkt. # 13) ¶ 2.) RCS's customers include car and motorcycle racing teams throughout the country, as well as manufacturers and distributors of motorcycles and recreational vehicles such as

---

[1]The parties agree that there are no genuine issues of material fact as to the duties Ms. Turcotte performed while employed by RCS. (*See* Pl.'s Mot. at 15; Def.'s Resp. at 1; Def.'s Reply at 1.) The only issue before the court is to determine the legal result flowing from these facts.

ORDER – 2

snowmobiles. (*Id.*) On September 20, 2004, Ms. Turcotte applied for and received a position as a sales person in RCS's bicycle and motorcycle division. (Declaration of Kelli Turcotte ("Turcotte Decl.") (Dkt. # 41), Ex. 1.)

The official job description for Ms. Turcotte was titled "sales and promotion"[2] and required Ms. Turcotte to perform various sales related tasks, including tasks such as "contact current customers about who they now contact," "get list of prospects," "let her contacts know that she is now with RCS," and sales goals such as "increase sales to $400,000 over next year." (Turcotte Decl., Ex. 1.) RCS's job description for "sales and promotions" was not limited to these core sales activities, however. (*Id.*) RCS also required Ms. Turcotte to (1) issue press releases regarding new products, new equipment, and sponsorship agreements, (2) determine which trade shows to attend and, while at the trade show, set-up and tear-down a sales booth and meet with possible contacts in the area, (3) research sponsorships and track results, (4) maintain sales materials and make sure they have the same "look and feel," (5) set up ads, verbiage, pictures, etc. for advertising and trace their effectiveness, and (6) solicit testimonials. (*Id.*) According to Ms. Turcotte, she never performed many of the tasks associated with advertising. (Turcotte Decl., ¶¶ 13-18.) Ms. Turcotte subsequently became responsible for all "motorsports" sales at RCS – which included not only bicycles and motorcycles but also snowmobiles, ATVs, and race cars. (*Id.* at ¶ 8.) According to Mr. Pepka, Ms. Turcotte was essentially hired to "expand the marketplace" and "sell more springs." (Declaration of Michael Subit ("Subit Decl.") (Dkt. # 39), Ex. 1 (Pepka Dep. at 23-24).)

---

[2]In the RCS organizational chart, Ms. Turcotte's title is listed as "Sales and Customer Service." (Pepka Dep., Ex. 1.) There are a four employees on the organization chart that are listed as "managers"; Ms. Turcotte is not one of them. (*Id.*)

In performing her duties as a sales person, Ms. Turcotte often negotiated between the customer and RCS's upper management to reduce pricing on the springs she sold. Ms. Turcotte did not have any authority to set the prices for the products she sold.[3] (Turcotte Decl. ¶ 19.) She was required to get upper management's approval for specific prices. (*Id.*) Mr. Pepka testified that Ms. Turcotte was not "directly involved with the pricing, but she would, if she thought the price was too high or too low, she'd put in her opinion." (Pepka Dep. at 143.) While Ms. Turcotte would offer an opinion on pricing and sales with respect to motorcycles, bicycles, and, after September 2005, snowmobiles, ATVs, and race cars, she had no involvement in the other product lines offered by RCS, including its aerospace spring products.[4] (Turcotte Decl. ¶ 37.)

As part of Ms. Turcotte's job responsibilities in promoting RCS springs, she traveled to attend trade shows and motor sports racing events. (Turcotte Decl. ¶ 20.) During these visits she would also call on RCS customers. (*Id.*) These sales trips typically occurred over the weekend and RCS paid Ms. Turcotte's travel expenses for these trips. (*Id.*) Before attending any of these trips, however, Ms. Turcotte was required to obtain approval from either Mr. Pepka or Andy Knebel, RCS's Vice President of Operations. (*Id.* at ¶ 21.) Ms. Turcotte was not paid for these trips, other than what she received as her salary. Instead, RCS informed Ms. Turcotte that she would not be paid overtime for these trips but that she could take time off during the subsequent workweek to offset the hours she had worked over the weekends. (*Id.* at ¶ 25.) Approximately,

---

[3]The court notes that Exhibit 2 to the Turcotte Declaration attaches a number of emails between Ms. Turcotte and Mr. Knebel wherein he either approves or disapproves her pricing requests.

[4]While Ms. Turcotte desired to work in the marketing division of RCS and performed some minimal marketing tasks, she was specifically denied the position of "Marketing Manager" for the motor sports division of RCS. (Turcotte Decl. ¶ 41.)

ORDER – 4

seven months into Ms. Turcotte's employment with RCS, RCS began requiring that Ms. Turcotte fill out "Time Clock Change Forms" for any time she was out of the office during normal business hours during the workweek. (Turcotte Decl. ¶ 33-34.) These "Time Clock Change Forms" indicate that Ms. Turcotte was granted compensation time for the hours she worked on the weekends up until sometime in 2005. (*Id.*, Ex. 5.) In September 2005, RCS began to deduct Ms. Turcotte's time out of the office during the work week from her paid time off leave bank and not permit her to "offset" her weekend hours with her time out of the office during the workweek.[5] (*Id.* at ¶ 38.) The majority of overtime claimed by Ms. Turcotte relates to the weekend trips she took on behalf of RCS from October 2004 through the Summer of 2006, at which time Ms. Turcotte began working less than 40 hours per week. (*Id.* at ¶ 44.) RCS contends that Ms. Turcotte is not entitled to any overtime because she was an "administrative" employee for RCS and therefore exempt from overtime pay.

### III. Analysis

As a general rule, the FLSA requires that employers pay their employees time and one-half for work exceeding forty hours per week. 29 U.S.C. § 207(a)(1). The FLSA provides an exemption from overtime for persons "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). Here, RCS, as the employer, has the burden of showing that one of these exemptions applies to Ms. Turcotte's position at RCS. *Bothell v. Phase Metrics, Inc.*, 299 F.3d 1120, 1124 (9th Cir. 2002); *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983). Because the FLSA "is to be liberally construed to apply to the furthest reaches consistent with Congressional

---

[5]The Time Clock Change Forms also indicate that RCS kept detailed records of Ms. Turcotte's hours worked and deducted time either from compensation time or her paid time off account when she worked less than 40 hours per week.

ORDER – 5

direction . . . FLSA exemptions are to be narrowly construed against . . . employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit." *Klem v. County of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000) (internal quotation marks and citations omitted). Whether an employee is exempt from the overtime provisions of the FLSA is a question of law appropriately determined on summary judgment. *See Clark v. United Emergency Animal Clinic, Inc.*, 390 F.3d 1124, 1128 (9th Cir. 2004) (affirming district court's order granting summary judgment based on administrative employee exemption). In this case, both parties agree that this matter is appropriate for disposition on summary judgment.

## 1. "Administrative Employee" Under the FLSA

RCS argues that Ms. Turcotte was exempt from the overtime provisions of the FLSA as an "administrative employee." In order to satisfy its burden of proving that this exemption applies, RCS must demonstrate that the Plaintiff satisfies the three requirements of the "short test." *See Bothell*, 299 F.3d at 1124. Under the "short test," an employee is exempt from the FLSA when:

1) The employee is compensated at least $455 per week on a salary basis;[6]

2) The employee's "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and

3) The employee's "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."[7]

---

[6]Ms. Turcotte earned a salary of approximately $60,000 per year, well over the $455 per week threshold. (Turcotte Dep. at 24.)

[7]The regulations governing FLSA exemptions were revised and reissued in 2004. In promulgating Section 541.201, the Department of Labor cited the Ninth Circuit's decision in *Bothell* with approval.

ORDER – 6

29 C.F.R. § 541.200(a); *Takacs v. A.G. Edwards & Sons, Inc.*, 444 F. Supp. 2d 1100, 1107 (S.D. Cal. 2006). Ms. Turcotte contends that the administrative employee exemption is inapplicable in this case because her primary duty was not directly related to RCS's management or general business practices nor did she exercise discretion and independent judgment in carrying out her primary duties. Ms. Turcotte contends that her role at RCS was almost exclusively dedicated to sales of RCS product. The court agrees.

### A.   Primary Duty

An employee is exempt from the FLSA when his or her primary duty relates directly to the "management or general business operations" of the employer. 29 C.F.R. § 541.200. Work relates directly to management or general business operations when it is "directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." 29 C.F.R. § 541.201. In other words, an administrative employee "engages in running the business itself or determining its overall course or policies, not just in the day-to-day carrying out of the business' affairs." *Bothell*, 299 F.3d at 1125 (internal quotation marks and citations omitted). In its 2004 regulations, the Department of Labor ("DOL") explained that a business's administrative operations include such activities as "advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control." Final Rule Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122, 22138 (April 23, 2004). Administrative operations include not only the formulation of "management policies," but also "major assignments" and work that "affects business operations to a substantial degree." *Id.*

ORDER – 7

RCS argues that Ms. Turcotte's primary duty consisted of performance directly related to management policies or general business operations. In support of this assertion, RCS claims that Ms. Turcotte was given independent control and discretion to (1) set prices for motor sports products under her control, (2) recommend policies and procedures, (3) meet customers' needs, and (4) offer promotional material and product placement to customers. (Def.'s Mot. at 10.) The court has reviewed RCS's support for these assertions, i.e., the numerous cites from Mr. Pepka's and Mr. Knebel's depositions, and finds that nothing in the record supports the assertion that Ms. Turcotte conducted any of these tasks independently. For example, RCS cites to Mr. Pepka's deposition for support of its proposition that Ms. Turcotte was given independent control and discretion to set prices for motor sports product and to offer product placement. Mr. Pepka testified:

> [Ms. Turcotte] would get a request for a quotation or a request for engineering or a request for more information from a customer, and if it's a more information, she'd fill that and give the customer the information. If it was an order, she would, or a request for a quote, say, she would follow through and go to customer services and get the part quoted, and after the part got quoted, it would go back to her and she would respond to the customer.

> If it was a purchase order, she would usually acknowledge, thank you for the order and, or customer service would respond with a thank you for the order and proceed with entering that order, and then both customer service and [Ms. Turcotte] would track that job through the shop, and a lot of times, on your own projects, you can never get them done fast enough, so you would go down and try to move those in front of other jobs.

(Pepka Dep. at 141-142.) It appears that Ms. Turcotte's role, according to Mr. Pepka, RCS's president, was to fill customer orders, say thank you for the order, and then ensure that the customer received the product in a timely fashion. The court finds these tasks to be consistent with Ms. Turcotte's primary duty of sales for RCS and not evidence that her primary duty related to the management or general business operations of RCS. The additional testimony relied upon by RCS reflects the reality that while Ms. Turcotte had

ORDER – 8

"input" in matters such as pricing and advertising she did not operate independently in these areas. (*See* Pepka Dep. at 27-28, 130; Declaration of Robert Adolf ("Adolf Decl.") (Dkt. # 37), Ex. 31 (Knebel Dep.) at 41-45.) Finally, the court does not find persuasive the vague testimony offered by RCS that Ms. Turcotte "had the ability to go out and take some product to people," as support for Ms. Turcotte's administrative responsibilities.

In its opposition to Ms. Turcotte's motion for summary judgment, RCS cites to additional poorly defined and sporadic activities performed by Ms. Turcotte and then extrapolates them into Ms. Turcotte's marketing, product research and development, and quality control duties. The "marketing" activity RCS refers to relates to "suggestions" Ms. Turcotte made to RCS's top executives regarding its name and logo. (Def.'s Resp. at 4-5.) With respect to her quality control activities, RCS cites to a memorandum Ms. Turcotte drafted to RCS that stated that "RCS quality control efforts must be stepped up to guarantee that all parts shipped fall within specified dimensions" and a handwritten note wherein Ms. Turcotte jotted "rate testing" as an area where she heard customers complain. (*Id.*) RCS also notes that Ms. Turcotte negotiated "a matter of significance" with a large customer, i.e., the terms and conditions of a detailed Distributorship Agreement, and that Ms. Turcotte generally gave senior executives at RCS suggestions and advice regarding significant matters. (*Id.* at 7.)

The test for administrative employee is not whether the employee ever performed functions relating to the management or general business operations of the employer, but rather whether these functions constituted the employee's "primary duty." The fact that RCS can point to a memorandum or email that illustrates that Ms. Turcotte had suggestions, advice, and, at times, a valuable role in the operation of RCS's business does not correlate to a finding that these tasks were her primary duty. The record before the court reveals that Ms. Turcotte's primary duty was to promote and sell springs.

ORDER – 9

Accordingly, the court is satisfied that based on the record before it, Ms. Turcotte was not an exempt employee under the FLSA's administrative exemption.

**B.    Exercise Discretion and Independent Judgment With Respect to Matters of Significance**

An employee is exempt from the FLSA when his or her primary duty "includes the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(3).  An employee exercises discretion and independent judgment when he or she makes a decision after comparing and evaluating all potential courses of conduct.  29 C.F.R. § 541.202(a).  "The term 'matters of significance' refers to the level of importance or consequence of the work performed."  *Id.*  In determining whether an employee exercises discretion and independent judgment, courts should consider all of the facts, including the factors identified in 29 C.F.R. § 541.202(b).  An employee does not exercise discretion merely because he or she uses "skill in applying well-established techniques, procedures or specific standards described in manuals or other sources."  29 C.F.R. § 541.202(e).  As discussed above, Ms. Turcotte was not in a position where her primary duty included the exercise of discretion and independent judgment with respect to matters of significance.  Indeed, Mr. Pepka and Mr. Knebel testified that in matters of significance, such as pricing or marketing, Ms. Turcotte was permitted to give input and to influence their decision-making but she was not given the responsibility of making these major decisions.

RCS focuses on Ms. Turcotte's exercise of discretion and judgment "in the field" to support this prong of the test for administrative exemptions.  For example, RCS explains that Ms. Turcotte suggested which races, events or trade shows to attend and how long to stay there.  (Pl.'s Resp. at 8.)  RCS further explains that Ms. Turcotte "was given broad discretion to offer free product samples to customers and potential customers

if she thought it would help increase business . . . ." (*Id.*)  The court discounts the first basis for RCS's assertion that Ms. Turcotte exercised discretion because the record is replete with documentation of the steps Ms. Turcotte was required to take in order to have her travel expenses approved for these trips.  On a number of occasions, despite Ms. Turcotte's general exercise of discretion in recommending what events to attend, her recommendations were rejected by RCS upper-management.  This does not reflect an independent exercise of discretion and judgment.  Moreover, the fact that Ms. Turcotte was given broad discretion to offer free samples to customers does not convince the court that she was given broad discretion in matters of significance.  Instead, a salesperson's offering of free samples seems to be directly in line with sales and not related to the management and operation of the business.

RCS further attempts to show Ms. Turcotte's independent judgment and discretion by arguing that she set her own schedule and work agenda.  The court is unaware of, and RCS fails to cite, any authority for the proposition that setting your own work schedule supports a finding that the employee exercised independent judgment and discretion relating to matters of significance.  Even if such authority existed, however, the court finds that the evidence weighs against RCS's contentions.  The record supports a finding that Ms. Turcotte was not free to set her own hours and was required to notify RCS when she would be out of the office during its normal business hours.  (*See* Adolf Decl., Ex. 10 (attaching numerous emails from Ms. Turcotte regarding missed hours).)

On the whole, the great weight of the evidence before the court supports Ms. Turcotte's position that she was not an administrative employee and therefore was not an exempt employee.  Ms. Turcotte's primary duties did not include work directly related to the management or general business operations of RCS – Ms. Turcotte's duties involved primarily, if not exclusively, the sale of RCS product.  Ms. Turcotte did not exercise

discretion and independent judgment with respect to matters of significance. While she did make recommendations on what events, trade show, and races to attend, these recommendations were subject to RCS's approval and she was required to set forth the estimated expense for the trip and provide a customer or contact list of people she would visit on these trips. She also provided free product on occasion. These activities, while arguably independent, do not rise to the level of matters of significance. The court therefore grants Ms. Turcotte's motion for partial summary judgment on the issue of her exemption from overtime compensation.

**2.    "Administrative Employee" Under the MWA**

Under the MWA, employers must pay overtime to employees who work more than 40 hours a week. RCW § 49.46.130(1). As under the FLSA, this requirement does not apply to any individual employed in an administrative capacity. RCW § 49.46.010(5)(c). Washington's Department of Labor and Industries has determined that an individual is employed in an administrative capacity when:

    1)    His or her "primary duty consists of the performance of office or non-manual field work directly related to management policies or general business operations of his employer or his employer's customers;"

    2)    The employee "customarily and regularly exercises discretion and independent judgment;"

    3)    The employee "executes under only general supervision special assignments and tasks;"

    4)    The employee devotes at least 80 percent of his or her time to his or her primary duty; and

    5)    The employee receives a salary of at least $150 per week.

WAC § 296-128-520.

Although the FLSA and MWA are not identical, Washington courts look to the FLSA for guidance in interpreting the MWA where the provisions of the two acts are

ORDER – 12

similar. *Drinkwitz v. Alliant Techsystems, Inc.*, 996 P.2d 582, 586 (Wash. 2000). Here, Ms. Turcotte's FLSA and MWA claims and RCS's defenses revolve around the application of the primary duty and exercise of discretion elements of the FLSA and MWA, which are nearly identical. *Compare* 29 C.F.R. § 541.200(a)(2)-(3), *with* WAC § 296-128-520.

Accordingly, the court finds that summary judgment in favor of Ms. Turcotte on the issue of whether she is an exempt employee under the FLSA dictates the same finding with respect to Ms. Turcotte's claims under the MWA. As explained above, the court finds that RCS does not meet its burden of showing that Ms. Turcotte's primary responsibilities at RCS were related to management policies or general business operations. Nor has RCS demonstrated that Ms. Turcotte exercised discretion and independent judgment. The court therefore finds Ms. Turcotte was not an exempt employee while working for RCS.

## IV. Conclusion

For the reasons stated above, the court DENIES RCS's motion for summary judgement (Dkt. # 10) and GRANTS Ms. Turcotte's motion for partial summary judgment (Dkt. # 23).

Dated this 8th day of October, 2008.

_____
JAMES L. ROBART
United States District Judge

ORDER – 13